Good morning, Your Honors. May it please the Court, my name is Tamara Clower from Tacoma Injury Law Group, here on behalf of the plaintiff, Ernest Kish. The plaintiff has appealed this matter alleging multiple errors on the part of the ALJ. First, the judge did not properly assess whether or not this plaintiff has any mental impairments, whether severe or not, and whether any severe mental impairment met or was equivalent to a listed impairment. And in that failure, the judge also failed to consider the combined effects of the plaintiff's impairments, both physical and mental. On that same issue, had the judge properly assessed if this plaintiff had any mental impairments, the judge was required to utilize the mandatory psychiatric review technique within its decision as required by, clearly required by the Social Security regulations, as well as this Court's opinion in Kaiser. Second, the ALJ erred by improperly discounting the plaintiff's credibility. Third, there was failure to calculate a residual functional capacity that took into consideration all of the medical evidence and all of the plaintiff's impairments combined. So I thought that the ALJ did, in fact, consider Dr. Johnson or I guess it's Dr. Hart's opinions. Well And that the problem was that their opinions come after the date in which he was qualified as last insured. Well, and that is true that both Dr. Johnson and Dr. Hart's examination and opinions were issued after the last period of insured status. But, very importantly, the opinions contained in those reports clearly provide diagnoses of mental impairments  that the impairments traced to something earlier, but that doesn't mean that they manifested earlier. Well, Dr. Hart diagnosed Mr. Kish with ADHD that he says clearly preexisted even the 2000 industrial injury. And he also stated that because of the ADHD that Mr. Kish would, his preexisting neck injuries would complicate this ADHD, would, the combination would complicate any type of retraining efforts and it would create chronic problems with distraction. And so clearly Dr. Hart's opinion of Mr. Kish having ADHD relates back to a period when Mr. Kish had an insured status. And Dr. Hart's opinions also relate, he diagnoses Mr. Kish with a depression, a pain disorder, and a generalized anxiety disorder. And he is very clear to relate those as well as the ADHD as having been caused by the industrial injury back in 2000. So we are of the opinion that those opinions clearly provide the diagnosis. One thing I understood about the ALJ's decision was that not only did he say that Dr. Hart and Dr. Johnson's opinions did not opine as to the onset of the mental impairment, but he also said that they relied upon his oral statements and the ALJ discredited. Well, and that's true, and that's another one of our arguments of error, Your Honor. There's no evidence in this record of any malingering or pain behavior on the part of Mr. Kish. He clearly meets the cotton test of having objective medical evidence of an impairment that could reasonably be expected to cause his pain. And in the court's opinion in Leicester, the court found it an error as a matter of law to discredit pain testimony just because it wasn't fully corroborated by the objective medical evidence. There was one basis that ALJ mentioned or stated that gave me some pause. Apparently along the way, Mr. Kish attended a vocational program. He did, Your Honor. For about nine months, and then he extended it an additional three months. He tried to. He tried to. He tried to. And he had testified about his daily routine. Right. And his routine indicated that he could barely, he had a tough time. And yet the ALJ pointed out that he was able to attend a vocational program, which was a pretty full-time program, as I understood. Well, it went from approximately 7 in the morning until about 2 in the afternoon. But he was also able to do it at his own pace, take breaks when he needed to. He could miss classes if necessary. He could do studying and homework at his own pace. Is all that in the record? It is, yes. Did he testify to that at the hearing? In terms of? What you just represented to us. Where is that in the record? Because I was looking for, I mean, I did see, in Dr. Johnson's report, Dr. Johnson, when he's summarizing his background, he does make reference to the fact that the vocational folks at the state arranged for him to have certain accommodations at the school. Right. But that's about all I could find. You know, I think what I was referring to was the case that we cited in our materials, the Lewis case. And in that case is where they discussed how attending school programs really shouldn't be held against a person, and it's not the same as substantial gainful activity. Because it's different. It's not as rigorous when you're going to school because you can study at your own pace. If you have to miss classes, you can. A lot of schools accommodate. My understanding was that the ALJ was concerned that he testified about his daily routine, which was very limited. And then when he had to go to, when the state said you have to take this voc ed program, you have to retrain in order to get workers comp, he was able to go to attend the school on a pretty consistent basis. Right. And then, of course, the ALJ said, well, this just doesn't add up. Well, but then he also had to quit that program because when it came time for an apprenticeship, physically he couldn't hack what they wanted him to do. And where is that in the record? That in the record is, I believe, I'm trying to recall specifically where that is in the record. I believe. I'm not sure he testified to that in the hearing. But I believe it is in either Dr. Hart or Dr. Johnson's reports. I don't remember seeing much of anything, as Judge Pius suggests, about how he handled this voc ed thing other than the time, the schedule was pretty long. What you're saying makes sense, i.e., when you're going to school, you don't necessarily have to be there every minute and so on. But I don't know if there's anything in the record that says how he actually handled this. Yeah. Yeah, the record is not very clear on that. Although his other testimony during the hearing made it very clear that he had significant limitations. Well, I think he testified that the pain interfered with his tendons. Right. It did strike me in this particular case, I mean, he did have some serious back surgeries. He had three spinal fusions, and on two of those procedures there was more than one level fused, and he currently has one level left. And whether that is going to need to be fused as well remains to be seen. Did you want to save time for rebuttal? I would love to. Yes, I would like to. Okay. Thank you. You've got five minutes left for rebuttal. Perfect. All right. Thank you. Your Honors, Counsel, may it please the Court, my name is Lisa Galdoptis. I represent the Commissioner of Social Security in this case. I'd like to address the issue of the vocational rehab. In the brief, it was pointed out this is not the same as SGA. What's SGA? I'm sorry, substantial gainful employment. I apologize for that. We see these cases on a pretty regular basis, but all the little terminology is not something that I. . . There certainly are a lot of acronyms. I'll do my best to avoid them. Well, the trouble is every area of the law has different acronyms. We go from one set to another. I understand. I'll do my best not to do that again. So the reason that the ALJ had issues with the credibility was not because of whether it could show that he could perform substantial gainful activity, but because it showed inconsistencies in his claims of what he was able to do and what he actually did. And that's in the Oren case. That's one of the ways that daily activities can be used in an adverse credibility finding. Well, was he talking about the same time period? I mean, he said at some point that he didn't go out of the house and so on, but I mean, he certainly went to the Spock Inn. He wasn't lying to say he didn't. Right. So why is it inconsistent? Because it was he was there seven hours. He was doing housework. I understand that, but did he say at any point that referring to the same time period that he wasn't doing anything? He was, well, in fact, he was saying he was doing light housework. He was doing light auto maintenance. He was doing light yard work. He had significant activities, and this was one more. Right. Okay. He wasn't doing a very part-time program. He was basically doing a full-time program and then doing other activities in addition to that. So in the overall view, we thought – But why does it make him not credible? What was he saying that was inconsistent with that? Well, he's alleging that he's unable to work due to his impairments, his pain, his fatigue, his alleged depression, and yet during – I thought usually a credibility determination is I say I'm not really doing any housework, but look, you are doing housework or something like that, something specific. I mean, yes, he was claiming he couldn't work. It isn't necessarily so that because you can go to school you can work. Right, but it does show that he is capable of more than he was alleging he was capable of doing. That's what I'm asking. What was he alleging that he was capable of doing at the time that was inconsistent with what he said? Well, he was saying he couldn't even do light work because he went back to his job. Right, and how does it prove that he couldn't do light work? Because he could go to school. In order to do light work, he'd have to work eight hours a day or seven hours a day straight through, and if he couldn't go to class, that's one thing, but if he couldn't show up at work, that's another thing. I don't understand the connection. Right, the connection is that in looking at a person's overall statements, if there are statements that don't add up. Right, so what is the statement that doesn't add up? That's what I'm trying to find out. That in the ALJ's opinion, he was able to do more than he could. Now, this wasn't the only credibility factor. Based on the medical, the contrast of the medical evidence where every doctor who saw him during the period at issue found he could do not only light work but medium to light work, despite the very serious injuries, the multiple surgeries. Yet every doctor reached that conclusion during the period at issue. Can we go to the non-reliance on Johnson and Horat? I understand that those exams were after the relevant period, but the ALJ didn't actually rely on that at all, did he? Well, the ALJ, the outside of the relevant period is primarily because some of it wasn't probative. The ALJ did not even need to address it because it wasn't. But he did address it. Exactly. Because he didn't regard it as non-probative. I mean, you're arguing now that it was non-probative, but he didn't argue it was not. I'm saying even if he hadn't addressed it, it wasn't probative evidence. Well, isn't that up to the ALJ? I mean, he seemed to take it as he noted that it was after the time period, but he didn't think it wasn't pertinent and he discounted it for different reasons. But that it can be inferred when he said it was offered well after the date last insured. It can be inferred that he was troubled by it and didn't think that it was probative. That would be an inference. Well, if he didn't think it was probative, then he would have said it wasn't probative. Instead, he went into long explanations for why he discounted it, none of which particularly hold up. I mean, for example, although offered well after the date last insured, I also considered the 2010 psychological evaluation. So he didn't discount it for that reason. However, I gave this evaluation little or no weight, and he says why. But the reason why was not because it was offered well after the date last insured. So even if the court finds that that reason is inadequate, it was inconsistent with the other medical evidence. So Dr. Hart's opinion did not refer back. There wasn't evidence in the record. There was evidence only of depression lasting a period that didn't extend into the alleged onset date. Did he have any psychological evaluation during the time period? He did not. No, he did not. He didn't, but he did mention it. It's mentioned several times, and it's referred to at the supplemental evidence of record at 470 as episodic depression. It's not referred to as an ongoing depression. Around the time that he had his surgeries, I believe the second surgery, there apparently was a long period of depression then, but it was amended, and it's referred to later as episodic. So even if he had some... By whom? By whom? You know, I'm sorry, I don't, I can look at that. But not by a psychologist or psychiatrist. That's correct, because there was no evidence of it. There was no reason to have a psychological examination because it was not arising during the time period. I mean, for example, he says of Dr. Hart that Dr. Hart relied quite heavily, if not entirely, on a claimant's subjective report of pain. In fact, Dr. Hart gave several psychological tests. He did objective tests, but again, we're talking about the time period at issue. I understand, but what the ALJ says is just wrong about why he discounted Dr. Hart. Incorrect. Factual wrong. When it's in the context of the time period, it is, Your Honor, I believe it is not wrong because he didn't, he wasn't making, doing testing or referring it back to that time period. So the fact that he was depressed in 2010 did not impact his mental impairments during the period at issue. And then he says things like he was referred to generate evidence for the current appeal and he was paid. Well, that's always true. Your Honor, the government is not resting on that reason. That is, that was not. I wouldn't get a doctor to do an exam for Frank. I wouldn't expect so. So what do you, what's your main point then? I don't quite, I'm not sure I quite follow where you're at. The point is that the fact that he was diagnosed with depression in 2010 does not establish the 12-month durational period that's required that has to be established before the date last insured. The difficulty is that as of December 31, 2008, it has to go back before that and extend for at least a year. But the problem, look, you can't have medical exams after the fact that relate to the earlier period, right? Absolutely. Right. The ALJ appeared to have regarded this as that because if he didn't regard it as that, then there was no reason for him to go into everything else he went into. I mean, you're relying on the timing, but he didn't rely on the timing. He did. He said it was offered well after the date last insured. He said it and then he said, but I considered it. Well, it was offered. I mean, he was trying to take into account what the claimant was offering. And perhaps he could have been more clear in saying it was offered well after the date last insured and did not specifically address it. But when you look at the contemporaneous evidence from that time period, there isn't the evidence of depression lasting 12 months. What about Dr. Johnson's report? I'm sorry, I was also going to mention Dr. Johnson. Dr. Johnson's report is a little bit more thorough than Dr. Hart's. That was not argued in the opening brief and it wasn't argued below, so that issue would be waived. Regardless, if the court wishes me to address it, I will. It was closer in time too, wasn't it? Pardon me? It was closer in time. It was just like a month or so after the time period. Correct. Actually, there were two Dr. Johnson reports. One was a month after. Right. One was a little bit later. Correct. And the one that was later was rejected because it was because of the inconsistencies. And, again, this was not. What inconsistencies? Sorry, let me. Because Dr. Johnson both opined that he would be able to return to light to medium work if he had chronic pain management treatment and then later agreed with a physical capacities evaluation specifying that he was capable only of sedentary work. And so that was inconsistent. But, again, I believe that that issue is waived. But Dr. Johnson did opine about his mental capacity. Dr. Johnson. Sorry.  He did, but there was no testing done, and it was diagnosed on a more probable than not basis, and it was based on self-reports because he didn't perform any tests. What struck me about the record is that there seems to have been some evidence that Mr. Kish suffered from depression and from pain, from consistent pain. Do you think the LHA had any obligation to further develop the record along these lines? As argued in the brief, no, because it was not inadequate to the law for proper evaluation. There was an ambiguity in that it was referred to as there was one long extended period before the alleged onset date, and after that it was referred to as episodic. Well, Dr. Johnson refers to it as episodic, but he says it was around, you know, in the last month or so. But that wouldn't... Episodic doesn't mean that it's not debilitating. No, but it also can be interpreted that it would not meet the 12-month durational limit that's required. You mean that in order to have a depression that counts, you have to be depressed for 12 months as opposed to depressed periodically in a debilitating way for several years? It would need to be at least... You mean you need to be continually depressed for 12 months? You need to have the impairment of depression for at least 12 months. If it's coming and going, then it wouldn't meet it. Really? Well, it might, depending on how fast or... The point is that there isn't evidence from that time period, and that looking back, they're guessing, and the LJ didn't find that that was... So if it's three months a year, I'm completely unable to leave my house, and for three months a year, that doesn't count as an impairment, because it's only for three months a year? And then if you're able to work for three months, I don't believe that... But the illness is a continuing illness. It's just that if it's treated or if it improves, then it wouldn't meet the 12-month durational limit. Anything else? No, there are no further questions. I have one further question. There was some evidence of problems with his hands, was there not? There, he had, I believe he testified it, and I believe that it did arise at times in the medical records. The ALJ did account for no reaching overhead, but the doctors, there were a number of physical capacities evaluations, and the doctors consistently in that time period found that he was able to perform medium to light. And, for example, Dr. Kretschmer performed, also filled out a physical capacities evaluation and did not find that he had additional limitations due to his hand. Janice, I believe I am out of time. I had thought that there was evidence of limited left-hand usage and that that wouldn't necessarily eliminate his ability to work, but it wasn't figured into the vocational experts' evidence who, vocational experts testified to jobs that required the use of both hands, and apparently that was not his situation. Is that not right? There was substantial evidence, however, supporting the ALJ's residual functional capacity finding, including Dr. Kretschmer's report. Okay, thanks. Thank you, Your Honors. Your Honors, a question was asked whether the ALJ had a duty to further develop the record, and I would say certainly that the answer is yes. In failing to credit the opinions of Dr. Hart and Dr. Johnson and failing to utilize the mandatory psychiatric review technique, at a minimum I believe that the ALJ had a duty to order a consultative examination if he felt that the record was inadequate or the medical evidence just wasn't enough for a decision to be made. So I think that definitely the record needed to be more fully developed, specifically in terms of the mental impairment. I would add, too, that Dr. Johnson, in addition to Dr. Hart's opinions that clearly related back to the time of insured status, Dr. Johnson stated in his report that this man has had suicidal ideations for the past seven years. Clearly that relates back to the period of his insured status. And then as to the discounting of the plaintiff's credibility, I've gone through every reason in the decision that the ALJ discredited his credibility, and not one of them, when you look at all of the reasons, they're all in error and you're not left with even one clear and convincing reason as to why his credibility should have been discounted. Now I can go through those points if that would help. Would that help, Your Honor? Sure. Okay. And I would add that the district court disagreed with the ALJ on all of these points. Except the educational. Except that's the only one that she agreed with. She found the plaintiff's reported daily activities were not a substantial part of his day. She cited vertigin, which says you don't have to be utterly incapacitated to be disabled. She found the plaintiff's reported daily activities do not demonstrate any transferable skills. She found that the plaintiff's testimony regarding his daily activities was consistent with his testimony regarding his limitations. She found that he did not lose his job due to attendance issues, but because of the residuals due to his industrial injury. She found it was error to assume that his pursuit of an L&I pension indicated motive for secondary gain. And contrary to the ALJ's opinions, she found that the plaintiff did exhibit discomfort during his hearing, whereas the ALJ reported that the plaintiff, quote, did not betray significant pain or discomfort during the hearing. And I think the most important way in which the district court disagreed with the ALJ is that the district court found, contrary to the ALJ, that the plaintiff's surgeries did not fully resolve his symptoms, and that any relief he got from each surgery was temporary with recurrent symptoms and the need for further surgery. So the only area where she agreed with the ALJ's discrediting of the plaintiff's credibility was the fact that he attended this vocational program. And again, I would assert that for all the reasons that we've discussed before, it is different to attend school as opposed to having to go to work every day and being productive without any breaks. You know, you can't work at your own pace, whereas you can study at your own pace. And if you have to miss classes, you're not going to be terminated from the program. So all of these failures that we're reporting, really it's like a domino effect. If you start with a step two failure to assess properly for mental impairments, and then you keep moving on, and you discredit the plaintiff's testimony on improper bases, where you really have a duty to come up with clear and convincing evidence and reasons to discredit him, it all spills over into a faulty residual functional capacity, and that in turn leads to an inaccurate or incomplete hypothetical question. I have one question, just to follow up on one that Judge Berzon asked, which is, when he attended the vocational ed program, where was that in terms of his various surgeries? Oh, good question. It was after all of them. I believe it was after the surgery. It was either after all of them or before the very last one. And I would add that the record does show, I believe in Dr. Johnson's report, that he was given certain accommodations. Yes. He was given certain accommodations when he was in that program. Okay. Thank you. Thank you very much. We appreciate counsel's arguments on this matter. It's submitted at this time.
judges: Schroeder, Paez, Berzon